UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-458 (HHK) |
| v. | : | |
| SEAN JORDAN, | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION FOR GUIDELINES CREDIT AND MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1 of the Sentencing Guidelines, to adjust the Defendant's offense level down three levels reflecting the Defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

**I.   BACKGROUND**

The Defendant was charged in a one-count indictment with Unlawful Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). On November 14, 2006, the Defendant pled guilty to the Indictment. At that time, the Defendant admitted to the following:

On July 29, 2005, members of the Capital Area Regional Fugitive Task Force went to 1203 Seventh Street, Northwest, Apartment 304, in this District to look for the Defendant, who had escaped from a half-way house. The Task Force members located the Defendant hiding in a water heater closet in the living room. The Task Force members saw a blue back pack located next to the

1

Defendant, and there was a loaded Intratec nine millimeter Luger Pistol, Model Tech-Dc-9, inside of the back pack. There was one round of nine millimeter ammunition in the chamber of the pistol, and 25 rounds of nine millimeter ammunition in the magazine of the pistol. The back pack was later identified as belonging to the Defendant. The gun and ammunition that were recovered in this case were not manufactured in the District of Columbia, and they were shipped to the District of Columbia through interstate commerce.

At the time of his arrest, Defendant Jordan had previously been convicted of a felony in the Commonwealth of Virginia, in criminal case number CF 940659.

## II.  SENTENCING CALCULATION

### A  Statutory Minimums and Maximums

Pursuant to 18 United States Code §922 and § 924, Count One carries a maximum sentence of 10 years imprisonment, a $250,000 fine and up to three years of supervised release.

### B.  Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the Defendant's total offense level at 23. See PSR ¶ 21. (This calculation contemplates a three-level decrease for acceptance of responsibility, and a two-level increase for obstruction of justice.) The PSR calculates the Defendant's criminal history as Category VI. See PSR ¶ 39. Therefore, the PSR calculates the guideline range for the Defendant at 92 to 115 months. See PSR ¶ 68.

## III.  GOVERNMENT'S RECOMMENDATIONS

### A.  Acceptance of Responsibility

The government agrees that the Defendant's base offense level should be decreased by three

points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has apparently cooperated in the pre-sentence investigation. Accordingly, the government is moving the Court to grant a three-level decrease in base offense level provided for in § 3E1.1(a) of the Sentencing Guidelines.

    B.    <u>Obstruction of Justice</u>

The government agrees that the Defendant's base offense level should be increased by two points pursuant to Section 3C1.1 of the Sentencing Guidelines. The Defendant willfully failed to appear for a status hearing before the Court on August 3, 2006, and then appeared before the Court only after he was arrested on a bench warrant.

    C .    <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the Defendant, the Court should impose a sentence at the low end of the guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the

Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (Court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the

direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section

3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

Consistent with the plea agreement, neither party is seeking a downward departure from the applicable Guidelines range. In this case, as explained further below, no unusual circumstances

7

exist that warrant an exception to the preference for Guidelines sentencing. Therefore, the government respectfully recommends that the Court sentence the Defendant within the Federal Guidelines range calculated in the Presentence Report, and the government does not oppose imposition of a sentence at the low end of the Guidelines range.

    D.    <u>Basis for Government's Sentencing Recommendation</u>

The Defendant has received a substantial benefit from this plea, and all the leniency he should receive is encompassed in the plea. The Defendant received a three-point decrease in his offense level as a result of his acceptance of responsibility, and the government agreed to ask for the low end of the applicable guidelines range.

Consideration of all the factors set forth in Section 3553(a) support the conclusion that a Guidelines sentence is reasonable. First, such a sentence is warranted by the nature and circumstances of the offense. Here, the Defendant was caught hiding in a closet with a loaded, nine millimeter pistol and ammunition for that firearm. Moreover, this is not the first time that the Defendant has been convicted of a weapons offense. Significantly, the Defendant committed the instant offense while on escape status for a 2002 conviction for the very same offense. Second, the history and characteristics of the Defendant warrant a Guidelines sentence. Although he is young, the Defendant's adult criminal history spans at least 13 years. The Defendant has multiple prior felony drug convictions, and his probation has been revoked in more than one prior case. Additionally, the Defendant has an apparent history of evading authorities and failing to appear in court. For example, the Defendant gave police officers a fictitious name when he was arrested for Possession of Marijuana in Virginia in 1996, and then failed to appear in court for that offense months later. The Defendant escaped from a half-way house and was found hiding in a closet when

he was arrested for this instant offense. Thereafter, the Defendant failed to appear for status hearing before this Court, and tested positive for phencyclidine on January 21, 2006, and for methamphetamine on January 30, 2006. Given all the 3553(a) factors, a sentence within the Guidelines range would reflect the seriousness of the offense, and provide adequate deterrence and respect for the law.

**IV.   CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the Defendant at the low end of the Guidelines range.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar 498-610

Precious Murchison
Assistant United States Attorney
Federal Major Crimes Section
Maryland Bar
555 4th Street, N.W.
Washington, DC 20530
(202) 307-6080
Fax: 353-9414

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served by first class mail to counsel for the Defendant, Jonathan Jeffress, Esquire, 625 Indiana Avenue, N.W., Washington, D.C., 20004, and by facsimile, facsimile number 202-208-7515 on this 11th day of April 2007.

_____
Precious Murchison
Assistant United States Attorney