IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Crim. No. 05-458 (HHK) |
| SEAN JORDAN, ) | |
| Defendant. ) | |

### DEFENDANT SEAN JORDAN'S
### MEMORANDUM IN AID OF SENTENCING

Mr. Sean Jordan, through undersigned counsel, hereby respectfully submits this sentencing memorandum in anticipation of Mr. Jordan's sentencing, which is currently scheduled for tomorrow, April 13, 2007. Based on all of the sentencing factors in this case–and most notably the turnaround in Mr. Jordan's life and conduct since his release from prison in November 2005–the defense respectfully submits that the appropriate sentence in this case is no more than 60 months. In addition, Mr. Jordan's time should be served concurrently with the sentence Mr. Jordan received in Superior Court for a violation of probation. Among other reasons, the sentences should be concurrent because Mr. Jordan appears to have received that sentence as a result of the proceedings in this case, even though the offense conduct in this case took place before Mr. Jordan was on probation in Superior Court.

### BACKGROUND

**A.   Offense Conduct.**

On July 29, 2005, the U.S. Marshals arrested Mr. Jordan at his aunt's home in

Washington, D.C. on a fugitive warrant. Mr. Jordan had walked away from a halfway house where he was serving the remainder of a federal conviction from 2001. When he was arrested, there was a backpack next to Mr. Jordan which contained a 9mm pistol and ammunition. Following his arrest, Mr. Jordan was returned to the Bureau of Prisons to complete his sentence from his 2001 conviction. Mr. Jordan was released from that sentence on November 17, 2005, and began to serve his term of supervised release. His probation officer is Officer Van Hoang.

**B.    Procedural Background and Mr. Jordan's Progress on Supervised Release.**

Approximately <u>five months</u> after his arrest in this case, on December 22, 2005, the grand jury returned an indictment for a violation of 18 U.S.C. § 922(g)(1). Why the government decided to wait so long to indict defendant is unknown to the defense. In addition, the government failed to inform anyone, including Mr. Jordan, about the then-pending indictment, even though Mr. Jordan was under the active supervision of the Probation Office. Mr. Jordan was not informed of the indictment until late April, 2006, when he promptly turned himself in.

Between Mr. Jordan's release from prison in November 2005, and his initial appearance on this case in May 2006, Mr. Jordan had taken very positive steps to turn his life around. Under Officer Van Hoang's supervision, Mr. Jordan was making significant strides in employment. Between March and May, 2006, Mr. Jordan was employed for a home improvement contractor named Joe Smith. "Mr. Smith verified the defendant's employment with his business and described Jordan as an 'excellent' employee. Mr. Smith said he would re-employ the defendant in the future, should the opportunity present." PSR ¶ 62.

In addition to employment, Mr. Jordan had reconnected with his daughter, Mikea Green, who is 12 years old. He and his girlfriend also has twins who were born on December 8, 2006.

Furthermore, Mr. Jordan incurred no new arrests or any other violations of his probation. Officer Van Hoang reports that Mr. Jordan's probation compliance was very good. The defense has respectfully asked Officer Van Hoang to attend tomorrow's sentencing hearing and is hopeful he can report to the Court on Mr. Jordan's progress between November 2005 and August 2006.

Mr. Jordan writes to the Court very convincingly about the changes in his perspective and in his life. See Letter to Court from Sean Jordan (Ex. A). Ms. Teresa Jordan, Mr. Jordan's mother and his closest friend and confidante, also poignantly states the following about her son based on this time period in his life:

> The defendant's mother . . . told us she believed the defendant was ready to turn his life around. She thought he needed a 'mentor to spend time with him' and 'provide him with direction.' Ms. Jordan reported the defendant witnessed his father mentally and physically abuse her and contends the domestic situation had a negative impact on him.

PSR ¶ 50. See also Letter to Court from Teresa Jordan (Ex. B). Similarly, Mr. Jordan's sister, Vonetta Jordan, has written to the Court concerning her brother:

> Our childhood was not a very good one, due to the fact that our father was very abusive both mentally and physically. Sean was beginning to get his life together. He was beginning to realize the importance of family and doing the right thing. Sean was ... working a full time job and now has a new take on life. Sean has children, and 11 year old daughter and two newborn twins that were born on December 8, 2006. Before his sons were born he talked about how he wanted to be a role model and have positive influence in his children's lives. . . .It wasn't easy for Sean to move forth in a new direction, but he really wanted to make a big difference in his children's lives this time around.

See also Letter to Court from Vonetta Jordan (Ex. B).

    **C.    Initial Appearance and Bond Determination.**

As noted, when Mr. Jordan received notice he had been indicted, he immediately turned himself in. On May 1, 2006, at his initial appearance, the government nevertheless sought to

detain Mr. Jordan and have him held without bond because of his past mistakes with the criminal justice system. Officer Van Hoang came and reported on Mr. Jordan's excellent progress since his release the previous November. Magistrate Judge Kay stated that he would have detained Mr. Jordan but for the progress he had made since his release. Mr. Jordan was admitted in to the High Intensity Supervision Program. Unfortunately, Mr. Jordan was later evicted from the residence where he was staying and panicked concerning his status in the HISP. Shortly thereafter, Mr. Jordan missed a court appearance (Mr. Jordan has received a two-point obstruction of justice enhancement in this case as a result of this missed court appearance). Mr. Jordan was arrested on August 17, 2006, and has been held without bond since that time at D.C. Jail. Because of his 2006 charge involving the walkaway from a halfway house, Mr. Jordan has been at the highest level of custody for the 9 months he has been at the D.C. Jail.

        D.     **Mr. Jordan's Superior Court Sentence and Highly Unusual Revocation of His Probation.**

On June 8, 2006, prior to the time he was stepped back in this case, Mr. Jordan was sentenced on his escape charge from his walkaway from the halfway house in early 2005. He received a sentence of 14 months with 12 months suspended, leaving a net sentence of 2 months. See PSR ¶ 35.

Based on defense counsel's understanding, something very strange happened at this point. Based on his plea in this case–for offense conduct which dated back to before his June 8, 2006 escape sentence–Mr. Jordan's Superior Court probation was revoked, and he was given the balance of the 14 months, i.e., 12 months. Because Mr. Jordan's conduct in this case took place before Mr. Jordan was placed on probation in Superior Court, a revocation based on his conduct

in this case makes no sense whatsoever, as the conduct in this case did not occur while Mr. Jordan was on probation.[1] The foregoing is one reason why a concurrent sentence in this case is appropriate here, as set forth below.

## DISCUSSION

I.   **THE POST-BOOKER SENTENCING FRAMEWORK.**

A.   **United States v. Booker and 18 U.S.C. § 3553(a).**

The Court in Booker held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors. Id. at 259 (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court, because section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. Id. at 261.

Thus, court are now required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a). (Emphasis added). These purposes include the necessity for the sentence:

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational

---

[1] Undersigned counsel is attempting to further explore the circumstances of Mr. Jordan's Superior Court sentence.

training, medical care, or other correctional treatment in the most effective manner.

Subsections (A) through (D) of § 3553(a)(2) thus highlight the primary purposes of sentencing. See also § 3551 (defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . ."). In determining a sentence consistent with these goals, the court must consider a number of other factors as well--see § 3553(a)(1)-(7)--including "the nature and circumstances of the offense and the history and characteristics of the defendant," the sentencing guidelines and policy statements issued by the Sentencing Commission, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In addition, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

      B.     **United States v. Lorenzo Pickett.**

In the recent case United States v. Pickett, -- F.3d --, 2007 WL 445937 (D.C. Cir., February 13, 2007), the D.C. Circuit greatly clarified the proper approach to sentencing post-Booker. The Circuit held that:

> [H]ow is a court to determine how much influence the factor we are concerned with--the advisory-only Guideline range--should have in sentencing a particular defendant? One might answer that the Guideline range should be considered presumptively reasonable. But that would be to confuse the standard this court and several others have adopted for appellate review with the standard to be applied by the sentencing court. A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step

in the direction of returning to the pre-Booker regime.

Id. at *12 (emphasis added).

## II. THE POST-BOOKER SENTENCING METHODOLOGY AS APPLIED TO SEAN L. JORDAN.

### A. The Nature and Circumstances Of The Offense.

When considering the nature and circumstances of the offense, the Court should consider that possession of a firearm is a serious offense. The Court should also consider, however, that the firearm was possessed in the home where Mr. Jordan was living, and not on the street where the dangers of possessing a firearm are magnified exponentially.

### B. The History and Characteristics Of Mr. Jordan.

When considering the history and characteristics of Mr. Jordan, the Court should consider Mr. Jordan's remarkable progress while on supervised release under the supervision of Probation Officer Van Hoang. Both statements from Officer Hoang and the letters attached hereto attest to this development in Mr. Jordan's outlook. See Exs. A-C. The defense has respectfully requested that Mr. Van Hoang attend the hearing and hopes the Court will hear from him. Mr. Jordan was doing the two things the Court and the community ask of someone on Supervised Release: working and taking care of his family, including his young daughter. His supervisor at work, Joe Smith, describes his work as "excellent" and states that he would re-hire Mr. Jordan, if given the chance.

### C.   The Advisory Guidelines.

As discussed earlier, Mr. Jordan's guidelines range is 92 to 115 months.

7

**III.    UNDER THE POST-BOOKER SENTENCING METHODOLOGY, THE APPROPRIATE SENTENCE IN THIS CASE IS NO MORE THAN 60 MONTHS.**

Consistent with 18 U.S.C. § 3553(a)(1) and Booker, the Court should sentence Mr. Jordan to a sentence that comports with the three main categories of sentencing factors: the nature of the offense, the history and characteristics of the of the defendant, and the needs of the public, which also includes consideration of the Guidelines. Based upon those factors and the information concerning Mr. Jordan discussed above, the defense respectfully submits that incarcerating Mr. Jordan for a period of time as long as 92 months is simply a waste. It is a waste of Mr. Jordan's life and it is a waste of scarce public resources. Sixty-months is a "sufficient, but not greater than necessary" sentence for Mr. Jordan.

In addition, the defense asks that the sentence be made to run concurrently with the probation revocation sentence Mr. Jordan is currently serving. Based on defense counsel's understanding, Mr. Jordan received that sentence for his offense conduct in this case, even though that conduct occurred before he was placed on probation in Superior Court. Accordingly, it makes eminent sense for this sentence to run concurrent to the 12 month revocation sentence Mr. Jordan received in Superior Court.

WHEREFORE, the aforementioned background information concerning Sean Jordan is submitted for this Court's consideration and to encourage the Court to sentence Mr. Jordan to a sentence no longer than 60 months, and to have that sentence run concurrent to his current 12-month Superior Court sentence.

                                        Respectfully submitted,
                                        A.J. Kramer
                                        Federal Public Defender

                                        _____/s/_____
                                        Mary M. Petras
                                        Jonathan S. Jeffress
                                        <u>Counsel for Sean Jordan</u>
                                        Assistant Federal Public Defender
                                        625 Indiana Avenue, N.W.
                                        Washington, D.C.  20004
                                        (202) 208-7500 ex.134